Opinion filed September 17, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed September
17, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-08-00098-CR

                                                       ________

 

                                   JOHN
MAC BURROW, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                              On Appeal
from the 91st District Court

                                                          Eastland
County, Texas

                                                      Trial
Court Cause No. 20,538

 



 

                                             M
E M O R A N D U M   O P I N I O N

John
Mac Burrow appeals his conviction by a jury of the offense of Adriving while intoxicated,
third offense or more B
habitual felony offender.@ 
The trial court assessed his punishment at twenty-five years in the Texas
Department of Criminal Justice, Institutional Division.  In a single issue on
appeal, Burrow contends that the evidence is legally and factually insufficient
to support his conviction.  We affirm.








In
order to determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979).  To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral light.
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling
in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v.
State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958
S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence. Watson, 204 S.W.3d at
414-15; Johnson, 23 S.W.3d at 10-11.

Michael
Orsini testified that he is a Texas State Trooper.  He indicated that he had
received special training in detecting signs that a person is intoxicated.  He
stated that, as he was following Burrow, Burrow crossed the Adouble center stripe no
passing zone@ line
several times.  He said that indicated to him that the driver could be intoxicated. 
Trooper Orsini related that, after stopping Burrow, while he was standing by
Burrow=s window, he
could smell a strong odor of alcohol coming from his side of the vehicle.  He
said that, after getting Burrow out of his vehicle, he could smell a strong
odor of alcohol when he was talking to Burrow.  Trooper Orsini also noted that,
as Burrow got out of his vehicle, he used the vehicle to steady himself and to
put his arm against.  He mentioned that Burrow=s
eyes were glassy, red, and bloodshot and that his speech was slurred.  He
acknowledged that Burrow told him that he had Bell=s palsy.  Trooper Orsini insisted that, based
upon his training and experience, Bell=s
palsy is not a medical condition that would affect Burrow=s performance or ability to
do a field sobriety test.

Trooper
Orsini testified that, when he first asked Burrow if he had had anything to
drink, Burrow told him he had had a couple of beers.  He indicated that Burrow
told him he was not on medication or taking anything and was not seeing a
physician.

Trooper
Orsini testified that he had been taught three different standardized field
sobriety tests:  the horizontal gaze nystagmus, which deals with the eyes; the
walk-and-turn; and the one-leg stand.  He indicated that he asked Burrow, who
did not appear to be injured or physically handicapped in any way, to perform
field sobriety tests the evening he was arrested.  He acknowledged that Burrow
had told him he had a knee injury.  He noted that Burrow did not appear to have
any problems walking into the courtroom.

After
relating that he had administered a horizontal gaze nystagmus test to Burrow,
Trooper Orsini indicated that there are six possible clues in the test and
that he believed Burrow=s
result was six.  He said that, based upon his training and experience, this
result showed that Burrow was intoxicated.  He stated that the horizontal gaze
nystagmus test is 88% accurate at .08.








Trooper
Orsini described the walk-and-turn test as one where the subject is instructed
to place one foot in front of the other and hold his arms down to the side.  He
indicated that Burrow did not follow directions and that he had difficulty
standing in the starting position.  He stated that there are eight clues in
this test and that Burrow had six, which, in his opinion, showed an impairment
of Burrow=s normal
mental or physical faculties.  He insisted that, in his training, he was taught
that a person who is intoxicated would have four or more clues.  He said that,
based upon his training and experience, the results of this test were
consistent with the results of the horizontal gaze nystagmus test.  He
testified that both tests together indicated to him that Burrow was
intoxicated. 

Trooper
Orsini indicated that he instructed Burrow on the one-leg stand test.  Because
Burrow had said he had an injury to his right knee, Trooper Orsini testified
that he gave him the option of using whatever leg he would feel comfortable
with.  He said that the goal of the test is to hold up one=s foot for approximately
thirty seconds.  He noted that Burrow was not able to do that.  He related that
three clues on this test would indicate intoxication and that Burrow had two.

Trooper
Orsini testified that, in the middle of the testing, Burrow interjected that he
and his girlfriend had been having sex and drinking beer.  He recalled that
Burrow had originally indicated that he had consumed a couple of beers but
that, when Burrow was telling him about his girlfriend, he said that he had
drunk six beers.  He said that he then administered to Burrow a preliminary
breath test, which he failed.  He indicated that, based on his observation and
talking with Burrow, he formed the opinion that Burrow was intoxicated and
could not have safely operated a vehicle that night in his condition.

He
stated that inside an ice chest in the back of Burrow=s vehicle there were nine full, cold cans of
Budweiser beer.  He related that, when he questioned Burrow as to why there
were no open containers, Burrow stated that he had thrown them out the window
of the vehicle.  Trooper Orsini expressed his opinion that Burrow was leaning
forward almost in an awkward position so that he would not be on camera.  He
also said that Burrow told him he had his last drink ten seconds before he was
pulled over.








While
a video taken by Trooper Orsini was being shown to the jury, he acknowledged
that he had not seen Burrow cross over the double yellow line before activating
his camera.  The video did not show Burrow crossing the double center stripe
but, on more than one occasion, showed him drifting to the left where his left
tire was on the line.  This did not occur only when Burrow was going around a
curve.  The highway upon which Burrow was driving, as shown in the video, was a
somewhat narrow, two-lane highway with no shoulders.

On
cross-examination, Trooper Orsini acknowledged that he did not do the
horizontal gaze nystagmus test in the way he was trained Afor the amount of seconds
for each eye, for each repetition and for each smooth pursuit and for each
deviation.@  He said
he was being honest with the jury that he did not do it in a standardized way
that night.  He acknowledged that the test, in order to be a valid indicator of
intoxication, has to be standardized.

On
redirect examination, Trooper Orsini quoted from an NHTSA (National Highway
Traffic Safety Administration) manual that indicated the field sobriety tests,
even when administered under less than ideal conditions, will generally serve
as valid and useful indicators of impairment.  He said that, in administering
the horizontal gaze nystagmus test, he did not make any error that would have
caused it to be invalid.  Evidence of Burrow=s
prior convictions was established by stipulation.

Based
upon our application of the standards previously set forth, we hold that the
evidence is legally and factually sufficient to support the conviction.  In
urging that the evidence is insufficient, Burrow stresses that he did not go
all the way over the double center stripe on the highway and that Trooper
Orisini did not correctly perform the horizontal gaze nystagmus test.  We
believe that, when the evidence is viewed as a whole, including the evidence to
which Burrow refers, a rational jury could find beyond a reasonable doubt that
Burrow was intoxicated.  We also hold that the verdict is not so weak that it
is clearly wrong and manifestly unjust and that the verdict is not against the
great weight and preponderance of the conflicting evidence.  Burrow appears to
principally rely on the cases of Stagg v. Texas Department of Public Safety,
81 S.W.3d 441 (Tex. App.CAustin
2002, no pet.), and Moore v. State, 640 S.W.2d 300 (Tex. Crim. App.
1982).  However, neither case is an appeal from a conviction for driving while
intoxicated, and there is nothing in either case that is inconsistent with our
opinion.  We overrule Burrow=s
sole issue on appeal.

The
judgment is affirmed.

 

September 17, 2009                                                                 PER
CURIAM

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.